## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF )<br><br>HULLEY ENTERPRISES LTD., )<br>59-61 Acropolis Avenue )<br>3rd Floor, Office 301 )<br>2012 Strovolos, Nicosia, Republic of Cyprus )<br><br>YUKOS UNIVERSAL LTD., and )<br>First Names House )<br>Victoria Road, Douglas )<br>IM2 4DF, Isle of Man )<br><br>VETERAN PETROLEUM LTD., )<br>Spyrou Kyprianou 20A )<br>Chapo Central, 1st Floor, Office 3 )<br>1075 Nicosia, Republic of Cyprus )<br><br>FOR AN ORDER PURSUANT TO 28 U.S.C. )<br>§ 1782 TO CONDUCT DISCOVERY FOR USE )<br>IN A FOREIGN PROCEEDING )<br> ) | Misc. Action No. _____ |

**HULLEY ENTERPRISES, LTD., YUKOS UNIVERSAL LTD., AND VETERAN PETROLEUM LTD.'S APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING AND STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Christopher Ryan (DC Bar No. 476661)
Theresa Amato (DC Bar No. 430259)
SHEARMAN & STERLING LLP
401 9th Street, N.W.
Washington, D.C. 20004-2128

Henry Weisburg
Richard Schwed
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022-6069

**TABLE OF CONTENTS**

I.    BACKGROUND ..................................................................................................3

    A.    THE FOREIGN PROCEEDINGS................................................................3

    B.    ROSNEFT, THE RUSSIAN FEDERATION, AND ITS AGENTS ......................4

    C.    THE WITNESSES.................................................................................8

II.    ARGUMENT....................................................................................................9

    A.    THE APPLICATION SATISFIES THE STATUTORY REQUIREMENTS
        OF SECTION 1782 ...........................................................................10

        1.    Baker Botts and Mr. Bull are Found Within the District for the
             District of Columbia ..................................................................10

        2.    The Application Seeks Discovery For Use in an Ongoing Proceeding
             Before a Foreign or International Tribunal..................................11

        3.    The Petitioners are Interested Persons in the Proceedings Before a
             Foreign or International Tribunal ...............................................12

    B.    THE DISCRETIONARY FACTORS MAKE CLEAR THE APPLICATION
        SHOULD BE GRANTED ......................................................................12

        1.    Neither Baker Botts Nor Mr. Bull is a Party to the Dutch Appellate
             Proceeding ..............................................................................13

        2.    The Dutch Courts Would be Receptive to U.S. Judicial Assistance ........13

        3.    The Application is Not an Attempt to Circumvent Restrictions on
             Discovery ................................................................................15

        4.    The Application is Narrowly Tailored.......................................16

III.    CONCLUSION...............................................................................................17

# TABLE OF AUTHORITIES

**Page**

**Cases**

*In re Application of Operacion y Supervision de Hoteles SA de CV*, No. 14 Misc. 82 (PGG), 2015 WL 82007 (S.D.N.Y. Jan. 6, 2015).............................................................15

*In re Application of Vickers Holding & Fin. Inc.*, No. 17-mc-80028 (N.D. Cal. Mar. 14, 2017) .........................................................................................................................14

*Cryolife, Inc. v. Tenaxis Med., Inc.*, No. Co8-05124-HRL, 2009 WL 88348 (N.D. Cal. Jan. 13, 2009) ........................................................................................................16

*In re Duizendstraal*, No. Civ. 395-MC-150, 1996 WL 772508 (N.D. Tex. Mar. 4, 1996) ............................................................................................................................14

*Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373 (5th Cir. 2010) .........................14

*Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095 (2d Cir. 1995)................................14

*In re Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. Civ. M19-88 (BSJ), 2006 WL 3844464 (S.D.N.Y. Dec. 29, 2009) .........................................................................14

*Gushlak v. Gushlak*, Nos. 11-2584-cv, 11-3808-cv, 2012 WL 2549813 (2d Cir. July 3, 2012) ..............................................................................................................2

*HT S.R.L. v. Valesco*, 125 F. Supp. 3d. 211 (D.D.C. 2015)............................................10

*HT S.R.L. v. Velasco*, 125 F. Supp. 3d 221 (D.D.C. 2015)............................................11

*In re Application of 000 Promnefstroy*, Misc. No. M 19-99 (RJS), 2009 WL 3335608 (S.D.N.Y. Oct. 15, 2009) ........................................................................13

*In re Application of Republic of Kazakhstan for an Order Directing Discovery from Clyde & Co LLP Pursuant to 28 U.S.C. §1782*, 15 Misc. 0081 (SHS) (S.D.N.Y. June 22, 2015) ........................................................................................11

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004)....................................passim

*In re Letter of Request from Crown Prosecution Serv. of U.K.*, 870 F.2d 686 (D.C. Cir. 1989)..................................................................................................................10

*In re Letters Rogatory from Tokyo Dist., Tokyo, Japan*, 539 F.2d 1216 (9th Cir. 1976)........................................................................................................................2

*In re Microsoft Corp.*, 428 F. Supp. 2d 188 (S.D.N.Y. 2006).........................................13

i

*Minatec Fin. S.A.R.L. v. SI Grp. Inc.*, No. 1:08-CV-269, 2008 WL 3884374
    (N.D.N.Y. Aug. 18, 2008) .................................................................................................15

*Nat'l Broad. Co., v. Bear Stearns & Co.*, 165 F.3d 184 (2d Cir. 1999) .......................................12

*In re Roz Trading Ltd.*, 469 F. Supp. 2d 1221 (N.D. Ga. 2006) ...............................................15, 16

*In re Sealed Appellant*, No. 07-10881, 2007 WL 4245417 (5th Cir. Dec. 3, 2007).....................15

*In re Varian Med. Sys. Int'l AG*, No. 16-mc-80048-MEJ, 2016 WL 1161568
    (N.D. Cal. Mar. 24, 2016)...............................................................................................14

**Statutes**

*28 U.S.C. § 1782 (1996) ..................................................................................................*passim*

**Rules**

Fed. R. Civ. P. 26 ...........................................................................................................................1

Fed. R. Civ. P. 30 ...........................................................................................................................1

Fed. R. Civ. P. 34 ...........................................................................................................................1

Fed. R. Civ. P. 45 ......................................................................................................................1, 2

Petitioners Hulley Enterprises Ltd., Yukos Universal Ltd., and Veteran Petroleum Ltd. (collectively, **"Petitioners"**) make this *ex parte* application (**"Application"**) pursuant to 28 U.S.C. § 1782 (1996) (**"Section 1782"**) and Fed. R. Civ. P. 26, 30, 34, and 45, for leave to serve subpoenas for the production of documents and the taking of deposition testimony on:  (a) Baker Botts LLP (**"Baker Botts"**), at its office located at 1299 Pennsylvania Avenue, N.W., Washington, D.C., 20004; and (b) Mr. Ryan E. Bull, (**"Mr. Bull"**) a partner in the Washington, D.C. office of Baker Botts, (collectively, the **"Witnesses"**).  The requested subpoenas seek evidence for use in connection with *Veteran Petroleum Limited, Yukos Universal Limited, Hulley Enterprises Limited v. The Russian Federation*, Case No. 200.197.079/01, an ongoing litigation pending in the Court of Appeal of The Hague (**"Dutch Appellate Proceeding"**).

As discussed below, the Dutch Appellate Proceeding relates to the set aside of arbitration awards issued to the Petitioners against the Russian Federation for damages in excess of US $50 billion.  The arbitration awards were set aside by the District Court of The Hague (the **"Dutch District Court"**), and the Petitioners seek their reinstatement.  The evidence sought through this Application will allow the Court of Appeal of The Hague (**"Dutch Appellate Court"**) to fully and fairly assess the conduct of the Russian Federation in its dealings with foreign courts.  In particular, Petitioners seek evidence relating to the Russian Federation's efforts, both directly and through its agents, to interfere with and manipulate Armenian courts in order to obtain favorable judgments and influence related cases then pending in the Dutch courts.  Baker Botts, Mr. Bull, and other individuals employed by Baker Botts allegedly were involved in those efforts and would possess both documentary evidence and direct knowledge relating to this issue.

Petitioner may submit its Application *ex parte.*  It is well established that Section 1782 applications may be submitted and granted on an *ex parte* basis.  *Gushlak v. Gushlak*, Nos. 11-

1

2584-cv, 11-3808-cv, 2012 WL 2549813, at *1 (2d Cir. July 3, 2012) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*."). Courts are willing to act *ex parte* in these circumstances because the rights of the party from whom discovery is sought are fully protected. Any discovery conducted pursuant to a Section 1782 subpoena must comply with the requirements of Fed. R. Civ. P. 45. As such, the targets of such subpoenas have ample opportunity to move to quash the subpoenas. *In re Letters Rogatory from Tokyo Dist., Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976) (holding that applications for subpoenas pursuant to section 1782 may be filed *ex parte* because "[t]he witnesses can . . . raise[ ] objections and exercise[ ] their due process rights by motions to quash the subpoenas."). Such opportunity ensures that their due process rights are fully protected.

Jurisdiction is proper under Section 1782. Venue is proper because the Witnesses can be found in the District of Columbia as described below in Section II. A. 1.

In support of this Application, the Petitioners have provided: a Declaration of Christopher M. Ryan of Shearman & Sterling, counsel to Petitioners ("**Ryan Decl.**"), with Exhibits 1-12 attached thereto, including a Subpoena to Baker Botts to Testify at a Deposition for Use in a Foreign Proceeding ("**Baker Botts Deposition Subpoena**" – Exhibit 1); a Subpoena to Mr. Bull to Testify at a Deposition For Use in a Foreign Proceeding ("**Bull Deposition Subpoena**" – Exhibit 2); a Subpoena to Baker Botts to Produce Documents For Use in a Foreign Proceeding ("**Baker Botts Document Subpoena**" – Exhibit 3); a Subpoena to Mr. Bull to Produce Documents for Use in a Foreign Proceeding ("**Bull Document Subpoena** – Exhibit 4); a Declaration of Marnix Leijten, of De Brauw Blackstone Westbroek N.V., Dutch counsel to Petitioners ("**Leijten Decl.**") with Exhibits 1-4 attached thereto; a Proposed Order; and other relevant documentation.

I.    **BACKGROUND**

A.    **THE FOREIGN PROCEEDINGS**

On July 18, 2014, an arbitral tribunal (the "**Tribunal**") sitting in The Hague, unanimously concluded that the Russian Federation breached its international obligations under the Energy Charter Treaty by bankrupting Yukos Oil Company ("**Yukos**") and unlawfully expropriating its assets. Leijten Decl. ¶ 6. The Tribunal ordered the Russian Federation to pay more than US$ 50 billion in three awards (the "**Awards**") to the Petitioners, the former majority shareholders of Yukos, who had seen their investment in Yukos destroyed through fabricated tax debts and an illegitimate bankruptcy, resulting in the vast majority of Yukos' assets being transferred to Russian state-owned oil and gas companies Rosneft and Gazprom. *Id.*

The Russian Federation filed an action to set aside the Awards in the District Court of The Hague in the Netherlands (the "**Dutch District Court**"), the legal seat of the arbitration. *Id.* at ¶ 7. On April 20, 2016, the Dutch District Court issued a ruling (the "**Dutch Judgment**") that set-aside the Petitioners' Awards on the ground that the Russian Federation had not bindingly agreed to provisionally apply Article 26 of the Energy Charter Treaty – containing its arbitration clause – prior to its ratification by the Russian legislature. *Id.* at ¶ 8, Exh. 3. The Dutch District Court held that the arbitral tribunal lacked jurisdiction over the Petitioners' claims. *Id.* at ¶ 8.

On July 18, 2016, the Petitioners appealed the Dutch Judgment. *Id.* at ¶ 9. On March 14, 2017, the Petitioners filed their statement of grounds of appeal ("**Statement of Appeal**"). *Id.* at ¶ 10. The Russian Federation's statement of defense on appeal ("**Statement of Defense**") is due on September 5, 2017. *Id.* The Petitioners will then have an opportunity to comment on any new exhibits, expert reports, and witness statements the Russian Federation files with its Statement of Defense, as both parties may brief the Dutch Appellate Court on whether the Petitioners should have the right to respond to the substance of the Statement of Defense. *Id.*

Both parties are in any event entitled to submit new evidence which has come to light before the merits hearing on appeal. *Id.* The Dutch Appellate Court has reserved two days for oral pleadings or a potential case management conference as needed in each of December 2017, and April and June 2018. *Id.* at ¶ 11.

As discussed below in Section II. A. 2., the Dutch Appellate Court will decide the Petitioners' appeal *de novo.* As a result, all issues raised in the Dutch District Court, as well as new issues, will be presented to the Dutch Appellate Court for review and determination. *Id.* at ¶ 12. In the Dutch District Court, the Russian Federation made numerous allegations of unclean hands against the Petitioners in relation to the acquisition of their investment. *Id.* The Russian Federation has made clear that it intends to reargue this issue before the Dutch Appellate Court and is likely to submit additional witness statement evidence in support of its position. *Id.* The discovery Petitioners seek in this Application will be used in response to the Russian Federation's submissions in their Statement of Defense regarding unclean hands or for submission by the Petitioners prior to the oral hearing on appeal as new evidence. *Id.* The Petitioners believe the evidence sought in this Application will show efforts by the Russian Federation to manipulate Armenian courts so as to influence proceedings before the Dutch courts. The evidence produced will allow the Dutch Appellate Court to fully and fairly assess the conduct of the Russian Federation in its dealings with foreign courts. *Id.* at ¶ 17. As discussed below and in the Declaration of Marnix Leijten, Dutch appellate procedure allows for the submission of new evidence and Dutch courts are open to receipt of evidence collected through Section 1782.

### B.    ROSNEFT, THE RUSSIAN FEDERATION, AND ITS AGENTS

In 2010 and 2011, several cases involving various Yukos entities were pending in the Armenian and Dutch courts. Press reports and publicly-available documents suggest that the

4

Russian Federation, through its agents, actively attempted to manipulate judges in the Armenian courts to obtain favorable judgments and, in so doing, influence the outcome of related Dutch proceedings. Indeed, as discussed below, the information details specific actions taken by the Russian Federation and its agents in certain Armenian cases and shows a pattern of conduct designed to manipulate legal proceedings in Armenia for advantage in a then-pending case in the Netherlands.

Rosneft, one of the world's largest publicly-traded petroleum companies, is and always was majority-owned by the Russian Federation. According to press reports, Rosneft, acting through counsel to the Russian Federation, arranged the outcome of several Yukos-related judicial decisions in Armenia, with the result that at least one such judgment "influenced the judicial process in the Netherlands." Joep Dohmen, Renée Postma, *Rosneft manipulated the judicial process in The Netherlands*, NRC (Nov. 24, 2016) (translated from original Dutch) ("**Article 1**"), Ryan Decl. ¶ 11 (Exh. 9, p. 1). On November 24, 2016, NRC Handelsblad ("**NRC**"), a leading Dutch newspaper, reported that in Armenia, "the company [did] not merely use judges, but also the Public Prosecutor's Office, the president's office, and contacts within the FSB, the Russian secret service." Joep Dohmen, Renée Postma, *How Rosneft Turned Rule of Law to Its Own Advantage*, NRC (Nov. 24, 2016) ("**Article 2**") (translated from original Dutch), Ryan Decl. ¶ 12 (Exh. 10, p. 3); *id.* at pp. 2, 4 ("The judgment of October 29, 2010…[from] the Court of Cassation…[was] also spoon-fed to the judges," a verdict which then "manipulate[ed] the Dutch legal system."). According to NRC, "[i]n total, the powerful Russian state-owned oil company direct[ed] the verdicts in five cases in front of the court of appeal and the Court of Cassation. Rosneft w[on] every single one of them." Ryan Decl. ¶ 12 (Exh. 10, Article 2, p. 3).

Judge Surik Ghazaryan ("**Judge Ghazaryan**"), who heard Yukos-related cases for the district court with general jurisdiction for the Arabkir and Kanaker-Zeytun administrative districts in Yerevan, the capital of Armenia, also confirmed the existence of such manipulation at the district court level.  Affidavit from Judge Ghazaryan, executed on October 19, 2012 in Los Angeles, CA ("**Ghazaryan Affidavit**"), Ryan Decl. ¶ 12(b) (Exh. 10(2), ¶ 3).  The NRC reported that in his affidavit, submitted as part of a related Yukos matter in the Dutch courts, Judge Ghazaryan explained the manipulation that occurred in one of his verdicts from February 2011 in "case 1494."  Ryan Decl. ¶ 12 (Exh. 10, Article 2, p. 2).  In particular, he confirmed that he was pressured by his superiors to issue judgments favorable to Rosneft, which was understood to be the same as issuing a judgment favorable to Russia.  Ryan Decl. ¶ 12(b) (Exh. 10(2), Ghazaryan Affidavit ¶ 21).  According to Judge Ghazaryan, such practices were a form of "telephone justice," a widespread practice in Armenia "in the Soviet period," in which judges are required to follow orders from more senior members of the judiciary.  *Id.* at ¶ 4.  Judge Ghazaryan attests that he was pressured to ignore evidence, to rule in a certain manner, and, in at least one instance, was handed a decision on a "memory card" by one of his superiors to be issued in a Yukos-related case.  *Id.* at ¶¶ 17, 20-21.  Ultimately, after receiving instructions to do so, Judge Ghazaryan issued the judgment he had been given.  *Id.* at ¶ 21.

The Russian Federation's efforts to manipulate the Armenian judiciary reportedly were widespread and took varied forms.  Reports show that Rosneft, facilitated by Armenian and Russian government officials, including former members of the FSB, the Russian secret service, "wrote judgments handed down by judges in Armenia in support of a claim in the millions against the former owners and management of the dismantled Russian oil company Yukos before the district court and court of appeals in Amsterdam."  Ryan Decl. ¶ 11 (Exh. 9, Article 1, p. 1).

6

Reports further show that Rosneft's efforts reflected:

> [A] well-oiled machine that betrays the influence of the FSB secret service. The emails portray former FSB captain Achkoebek Achkoebekov – now employed by Rosneft – as someone skilled at making things run smoothly, doing all kinds of odd jobs here and there. Using his private email address, he forwards draft verdicts to the Rosneft attorneys and maintains contacts with the Armenian government.

Ryan Decl. ¶ 12 (Exh. 10, Article 2, p. 3).

It also was reported that "Rosneft was assisted by the American legal firm Baker Botts LLP and authorities in Armenia and Russia, including former members of the Russian secret service FSB. This is evident from dozens of emails and documents in the possession of NRC."

Ryan Decl. ¶ 11 (Exh. 9, Article 1, p. 1).

> The key role played by the American law firm Baker Botts is remarkable. The text of one of the decisions by the Court of Cassation was written in the Baker Botts office in Moscow. The email correspondence shows how an employee in that office acted as the ghostwriter of judgments. In this manipulation, Rosneft relied on key figures in the judiciary and public prosecution service in Armenia, as well as on the legal adviser of Armenian President Serzh Sargsyan.

*Id.* at p. 2. Article 2 not only reveals the existence of this scheme to manipulate the Armenian judiciary, but also how it was accomplished:

> [T]he emails show exactly how this case was handled. From [Rosneft-hired Armenian lawyer, Edward] Mouradian's early-morning flight to icy Moscow, to details on how the verdicts were honed and edited. Ryan Bull, partner in the American law firm, and his employee Izabella Sarkisyan also work[ed] on the verdicts from their Moscow office.

Ryan Decl. ¶ 12 (Exh. 10, Article 2, p. 3).

The *Financial Times* reported on November 28, 2016 that "Lawyers for Russia's state-controlled oil giant Rosneft . . . manipulated a series of Armenian court rulings in order to bolster its case in the west to seize hundreds of millions of dollars in assets

belonging to the now-defunct private oil major Yukos . . . ." Catherine Belton, Michael Stott, *Rosneft lawyers Manipulate Yukos Rulings emails suggest*, Financial Times, November 28, 2016 ("**Article 3**"), Ryan Decl. ¶ 13 (Exh. 11, p. 1). The *Financial Times* also reported that "the emails show Rosneft lawyers giving instructions to a senior member of the Armenian justice system on the outcomes required in five Yukos-related cases. Other emails show Rosneft lawyers working to draft rulings in advance for the Armenian court in cases in 2010-11 over Rosneft's takeover of Yukos CIS." *Id.* at p. 2.

These reports are supported by documents submitted as part of a separate Dutch litigation involving the forced bankruptcy of Yukos by the Russian Federation. *See* Ryan Decl. ¶ 11 (Exh. 9, Article 1, pp. 1-2); *id.* at ¶ 12 (Exh. 10, Article 2, p. 4). Indeed, these documents appear to show Baker Botts and Mr. Bull's participation in the Russian Federation's efforts directed at the Armenian courts. *Id.* at ¶ 12(h) (Exhs. 10(9)(a)-(b)). The *Financial Times* and *NRC* published various official responses from individuals and entities named in their articles to take issue with these reports. *See* Ryan Decl. ¶ 13 (Exh. 11, pp. 2, 5-6); *id.* at ¶ 12(i) (Exhs. 10(10)(a)-(10)(d)).

A letter from Cleary Gottlieb Steen & Hamilton LLP to the Tribunal on November 4, 2010, a timeframe concurrent to the events described in the Articles, confirms that Baker Botts joined as counsel of record to represent the Russian Federation in the arbitration proceedings before the Tribunal. Letter from Matthew D. Slater and Claudia Annacker of Cleary Gottlieb Steen & Hamilton LLP, to L. Yves Fortier, Dr. Charles Poncet, and Judge Stephen M. Schwebel, chairman and members of the Tribunal (Nov. 4, 2010), Ryan Decl. ¶ 14 (Exh. 12).

## C.      THE WITNESSES

Baker Botts LLP is located at 1299 Pennsylvania Avenue, N.W., Washington, D.C. 20004. *Global Reach: Washington*, BAKER BOTTS LLP,

http://www.bakerbotts.com/offices/washington (last visited May 11, 2017), Ryan Decl. ¶ 7 (Exh.

5). Ms. Izabella Sarkisyan is an associate in the Baker Botts Moscow office, who worked with

Mr. Bull during the representation of Rosneft. *Izabella Sarkisyan*, BAKER BOTTS LLP,

http://www.bakerbotts.com/people/s/sarkisyan-izabella (last visited May 11, 2017), Ryan Decl. ¶

10 (Exh. 8). Baker Botts has possession, custody, or control of Ms. Sarkisyan's emails and other

documents. Mr. Bull is a partner in the Washington, D.C. office of Baker Botts LLP. *Ryan E.

Bull*, BAKER BOTTS LLP, http://www.bakerbotts.com/people/b/bull-ryan-e (last visited May 11,

2017). Ryan Decl. ¶ 9 (Exh. 7).

The Petitioners believe that Mr. Bull and Baker Botts have in their possession, custody,

or control evidence that relates to efforts by the Russian Federation, both directly and through its

agents, to interfere with and manipulate foreign judicial proceedings for the benefit of the

Russian Federation. Neither Baker Botts nor Mr. Bull is a party to the litigation in the Dutch

Appellate Proceeding.

## II.    ARGUMENT

Section 1782 permits U.S. courts to grant discovery in aid of foreign and international

legal proceedings. The statute provides, in relevant part:

> The district court of the district in which a person resides or is found may
> order him to give his testimony or statement or to produce a document or
> other thing for use in a proceeding in a foreign or international tribunal,
> including criminal investigations conducted before formal accusations.
> The order may be pursuant to a letter rogatory issued, or request made, by
> a foreign or international tribunal or upon the application of any interested
> person and may direct that the testimony or statement be given, or the
> document or other thing be produced, before a person appointed by the
> court.

28 U.S.C. §1782(a) (1996).

Section 1782 applies broadly in the context of international litigation and was intended to

ease the burden of obtaining judicial assistance in aid of such proceedings. *See HT S.R.L. v.*

*Valesco*, 125 F. Supp. 3d. 211, 219 (D.D.C. 2015) (noting the statute has, over the years, been amended to "substantially broaden[] the scope of assistance."). Indeed, as the United States Court of Appeals for the District of Columbia Circuit has stated, Section 1782 "liberalizes existing U.S. procedures for assisting foreign and international tribunals and litigants in obtaining oral and documentary evidence in the United States." *In re Letter of Request from Crown Prosecution Serv. of U.K.*, 870 F.2d 686, 693 (D.C. Cir. 1989).

This Application satisfies both the statutory requisites of Section 1782(a) and the discretionary factors cited by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 244-45, 264-65 (2004). Accordingly, this Court should authorize the Petitioners to issue subpoenas for the production of documents and taking of depositions to Baker Botts and Mr. Bull.

## A.   THE APPLICATION SATISFIES THE STATUTORY REQUIREMENTS OF SECTION 1782

Three statutory conditions must be met before a court may order discovery pursuant to Section 1782(a):  (1) the party from whom discovery is sought must "reside" or be "found" in the district in which the District Court sits; (2) the request for discovery must be "for use in a proceeding in a foreign or international tribunal"; and (3) the applicant must be a foreign or international tribunal, or an "interested person" in the foreign proceedings. 28 U.S.C. § 1782(a) (1996). Each of these requirements is met.

### 1.   Baker Botts and Mr. Bull are Found Within the District for the District of Columbia

Baker Botts is a global law firm with approximately 725 attorneys in 14 offices worldwide. *See About Us: Overview*, BAKER BOTTS LLP, http://www.bakerbotts.com/aboutus/overview (last visited May 11, 2017), Ryan Decl. ¶ 8 (Exh. 6). The firm has had an office in the District of Columbia since 1973. *See Global Reach:*

*Washington*, BAKER BOTTS LLP, http://www.bakerbotts.com/offices/washington (last visited

May 11, 2017), Ryan Decl. ¶ 7 (Exh. 5).  Today, the Washington, D.C. office of Baker Botts

employs approximately 130 attorneys and is located at 1299 Pennsylvania Avenue, N.W.  The

firm's persistent presence in the District of Columbia, as well as the systematic and continuous

practice of law by its partners in the District, establishes that Baker Botts may be "found" in the

District of Columbia for purposes of Section 1782.  *In re Application of Republic of Kazakhstan*

*for an Order Directing Discovery from Clyde & Co LLP Pursuant to 28 U.S.C. §1782*, 15 Misc.

0081 (SHS) (S.D.N.Y. June 22, 2015).

     An individual may be "found" wherever he or she is physically present, even if

temporary, when officially notified of the request.  *HT S.R.L. v. Velasco*, 125 F. Supp. 3d 211,

222 (D.D.C. 2015).  Mr. Bull is a partner in Baker Botts Washington, D.C. office.  *See Ryan E.*

*Bull*, BAKER BOTTS LLP, http://www.bakerbotts.com/people/b/bull-ryan-e (last visited May 11,

2017), Ryan Decl. ¶ 9 (Exh. 7).  Mr. Bull is admitted to the bar of the District of Columbia, as

well as to the bars of this Court and the Court of Appeals for the D.C. Circuit.  *See id*.  Mr. Bull

may be "found" in the District of Columbia for purposes of Section 1782.

     **2.**     **The Application Seeks Discovery For Use in an Ongoing Proceeding**
              **Before a Foreign or International Tribunal**

     The Petitioners are parties to the Dutch Appellate Proceeding, which relates to the set

aside of arbitration awards totaling US $50 billion.  There is no dispute that a foreign court, like

the Dutch Appellate Court, is a "foreign or international tribunal" within the meaning of Section

1782.  *See Intel,* 542 U.S. at 257 (holding that it is "[b]eyond question" that conventional courts

of first instance "qualify as tribunals"); *Nat'l Broad. Co., v. Bear Stearns & Co.*, 165 F.3d 184,

190 (2d Cir. 1999) (the drafters of the amended Section 1782 "intended to cover governmental or

intergovernmental arbitral tribunals *and conventional courts* and other state-sponsored

adjudicatory bodies") (emphasis added).

The Dutch Appellate Court will decide the question of whether the Awards should be set aside *de novo.* Leijten Decl. ¶¶ 9, 12. Under Dutch appellate procedures, the court will receive evidence and arguments, including new evidence and arguments not presented in the court of first instance. *Id.* In addition, the court will decide all issues raised by the parties, not only those relied upon by the Dutch District Court in reaching its decision. *Id.* at ¶ 9.

Marnix Leijten, counsel for the Petitioners in the Dutch Appellate Proceeding, has confirmed that the evidence sought through this Application would be used in support of the Petitioners' case. *Id.* at ¶ 12. According to Mr. Leijten, the Petitioners will have the opportunity to submit new evidence in the Dutch Appellate Proceedings as soon as new evidence has come to light. *Id.* at ¶ 10.

### 3.     The Petitioners are Interested Persons in the Proceedings Before a Foreign or International Tribunal

As stated, the Petitioners are parties to the Dutch Appellate Proceeding. The Petitioners, therefore, are "interested person[s]" within the meaning of Section 1782. *Intel*, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782.").

### B.     THE DISCRETIONARY FACTORS MAKE CLEAR THE APPLICATION SHOULD BE GRANTED

Where, as here, the statutory requirements are met, courts balance four discretionary factors in deciding whether to grant a Section 1782 application:  (1) whether the entity from whom evidence is sought is a party to the foreign proceeding; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to federal-court judicial assistance"; (3) whether the

discovery request "conceals an attempt to circumvent" specific foreign restrictions or foreign or United States policies; and (4) whether the discovery requests are "unduly intrusive or burdensome." *Intel*, 542 U.S. at 244-45, 264-65. As detailed below, these factors clearly favor granting the Petitioners' request.

### 1.   Neither Baker Botts Nor Mr. Bull is a Party to the Dutch Appellate Proceeding

Neither Baker Botts nor Mr. Bull is a party to the Dutch Appellate Proceeding. *See* Leijten Decl. ¶¶ 3 (Exhs. 2(a)-(c)); *id.* at 18. *See Intel*, 542 U.S. at 244 (noting that "nonparticipants in foreign proceedings may be outside the foreign tribunal's jurisdictional reach; thus, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid."). Likewise, it does not appear that either Baker Botts or Mr. Bull would be subject to the compulsory jurisdiction of the Dutch courts. *See* Leijten Decl. ¶¶ 3, 18. As such, the documents and testimony sought in this Application are outside the control of the Dutch courts. The Petitioners, therefore, require this Court's assistance to obtain discovery from both Baker Botts and Mr. Bull. *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 192 (S.D.N.Y. 2006) (assessing "whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent § 1782 aid."); *In re Application of 000 Promnefstroy*, Misc. No. M 19-99 (RJS), 2009 WL 3335608, at *5 (S.D.N.Y. Oct. 15, 2009) ("[i]t is the foreign tribunal's ability to control the evidence and order production, not the nominal target of the § 1782 application, on which the district court should focus.").

### 2.   The Dutch Courts Would be Receptive to U.S. Judicial Assistance

Courts typically will grant a Section 1782 application unless it is clear that the foreign tribunal will not admit the evidence obtained through the process. *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995) (finding that a "court's inquiry into

discoverability of requested materials should consider only *authoritative proof* that a foreign

tribunal would reject evidence obtained with the aid of section 1782," such as "judicial,

executive or legislative declarations that specifically address the use of evidence gathered under

foreign procedures."); *see also Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 378 (5th

Cir. 2010). Where "[t]here is no information that the [foreign] court would reject information

obtained through §1782 discovery . . . courts [should] 'err on the side of permitting discovery.'"

Order Granting Petitioner's Application for an Order to Conduct Discovery for Use in a Foreign

Legal Proceeding Pursuant to 28 U.S.C. § 1782 at 5, *In re Application of Vickers Holding & Fin.*

*Inc.*, No. 17-mc-80028 (N.D. Cal. Mar. 14, 2017), ECF No. 4 (citing *In re Varian Med. Sys. Int'l*

*AG*, No. 16-mc-80048-MEJ, 2016 WL 1161568, at \*4 (N.D. Cal. Mar. 24, 2016)).

There is no reason to suspect that the Dutch courts would not be receptive to documents

produced as a result of this Application. *First*, Dutch counsel has indicated that, as a matter of

Dutch appellate practice, evidence may be submitted in support of a party's appeal before the

Dutch Appellate Court. Leijten Decl. ¶ 9. He has further stated that this Application and the use

of documents or testimony produced as a result thereof, would not violate any Dutch laws or

regulations. *Id.* at ¶ 15; *see In re Duizendstraal*, No. Civ. 395-MC-150, 1996 WL 772508, \*1

(N.D. Tex. Mar. 4, 1996) ("[i]n determining whether the information sought is discoverable, the

Court should consider only authoritative proof that a foreign tribunal would reject evidence

obtained under" Section 1782); *see also In re Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. Civ.

M19-88 (BSJ), 2006 WL 3844464, at \*6 (S.D.N.Y. Dec. 29, 2009) (courts should deny a request

on this basis only when there is "authoritative proof" that the foreign tribunal does not allow

introduction of the materials sought). To the contrary, Dutch courts have held that parties to

Dutch legal proceedings may rely on Section 1782 applications as a valid means of obtaining

evidence.  Leijten Decl. ¶ 14.

*Second*, there are no similar applications for documents pending in the Dutch Appellate

Proceeding that would militate in favor of deferring to those courts.  *Id.* at ¶ 18; *cf. In re Sealed*

*Appellant*, No. 07-10881, 2007 WL 4245417, at *1 (5th Cir. Dec. 3, 2007) (rejecting Section

1782 application where foreign court was considering same discovery request).

### 3.     The Application is Not an Attempt to Circumvent Restrictions on Discovery

The Supreme Court has cautioned that Section 1782 applications should not be granted

where the applicant is seeking to circumvent specific restrictions on the discovery sought.  *Intel*,

542 U.S. at 244-45, 264-65;  *In re Application of Operacion y Supervision de Hoteles SA de CV*,

No. 14 Misc. 82 (PGG), 2015 WL 82007, at *7 (S.D.N.Y. Jan. 6, 2015) (citations omitted)

("[C]ase law suggests that the primary focus of the third *Intel* factor is not circumvention of U.S.

policies, but rather whether a party is engaging in 'blatant end-run[s] around 'foreign proof-

gathering restrictions or other policies of a foreign country.'").

That is not the case here.  Because Baker Botts and Mr. Bull are not parties to the Dutch

Appellate Proceeding, there may be no other way to get this information outside of an order from

this Court.  *See Minatec Fin. S.A.R.L. v. SI Grp. Inc.*, No. 1:08-CV-269, 2008 WL 3884374, at

*8 (N.D.N.Y. Aug. 18, 2008) (there is no "foreign tribunal exhaustion requirement nor any

explicit direction . . . .  The primary issue for us is whether [the applicant] is pursuing this

discovery in bad faith."); *In re Roz Trading Ltd.*, 469 F. Supp. 2d 1221, 1229-30 (N.D. Ga.

2006) ("Section 1782(a) does not contain an exhaustion requirement.  The Petitioner meets the

requirements of the statute, and is thus entitled under the present circumstances to seek judicial

assistance for use in the foreign proceeding, regardless of other discovery means that may be

available.").

### 4.   The Application is Narrowly Tailored

The Application is narrowly tailored to seek only documents and testimony relating to the Russian Federation's effort, both directly and through its agents, to manipulate to its advantage foreign judicial proceedings in relation to its destruction of Yukos. This evidence bears directly on the trustworthiness of the Russian Federation generally and the weight that can be accorded to its submissions in the Dutch Appellate Proceedings.

As noted above, publicly available documents suggest that Baker Botts generally, and Mr. Bull specifically, communicated with Rosneft and other agents of the Russian Federation to manipulate one or more decisions of the Armenian courts to gain strategic advantage in the Dutch courts. These communications, as well as others like them and related testimony, go to the heart of the Russian Federation's conduct in relation to Yukos and to issues pertinent to the Dutch Appellate Proceeding.

Further, as reflected in the attached subpoenas, Petitioners have narrowly tailored their requests to specific time periods and to individuals identified in publicly available documents as having participated in the relevant communications. As such, the requested documents are clearly discoverable under Section 1782. *See, e.g., Cryolife, Inc. v. Tenaxis Med., Inc.*, No. C08-05124-HRL, 2009 WL 88348, at *4 (N.D. Cal. Jan. 13, 2009) (noting applicant is only required to show that the information would be "useful" in the foreign proceeding); *In re Roz Trading*, 469 F. Supp. 2d at 1230 (noting that the documents requested need only be "generally relevant to the dispute").

III.   **CONCLUSION**

For the reasons stated herein, Petitioners respectfully request that the Court:

(1) Grant Petitioners' Application for discovery pursuant to 28 U.S.C. § 1782;

(2) Authorize Petitioners, through undersigned counsel or their agents, to issue and serve subpoenas upon Mr. Bull and Baker Botts LLP in substantially the same form as attached to the Declaration of Christopher M. Ryan as Exhibits 1-4 to take discovery relating to the issues identified in this Application; and

(3) Direct the Witnesses Mr. Bull and Baker Botts LLP to comply with such subpoenas in accordance with the Federal Rules of Civil Procedure and the Rules of this Court.


Dated:  June _19_, 2017


                                        Respectfully Submitted,

                                        _____
                                        Christopher Ryan (DC Bar No. 476661)
                                        Theresa Amato (DC Bar No. 430259)
                                        SHEARMAN & STERLING LLP
                                        401 9th Street, N.W.
                                        Washington, D.C. 20004-2128
                                        Telephone: (202) 508-8000
                                        E-mail:  christopher.ryan@shearman.com
                                                 theresa.amato@shearman.com

                                        Henry Weisburg
                                        Richard Schwed
                                        SHEARMAN & STERLING LLP
                                        599 Lexington Avenue
                                        New York, New York 10022-6069
                                        Telephone: (212) 848-4000
                                        E-mail:  hweisburg@shearman.com
                                                 rschwed@shearman.com


17