UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE APPLICATION OF<br>HULLEY ENTERPRISES LTD.,<br>YUKOS UNIVERSAL LTD., and<br>VETERAN PETROLEUM LTD. FOR AN<br>ORDER PURSUANT TO 28 U.S.C. § 1782<br>TO CONDUCT DISCOVERY FOR USE IN<br>A FOREIGN PROCEEDING | Misc. Action No. _____ |

**DECLARATION OF MARNIX LEIJTEN IN SUPPORT OF HULLEY ENTERPRISES LTD., YUKOS UNIVERSAL LTD., AND VETERAN PETROLEUM LTD.'S APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING**

I, MARNIX LEIJTEN, pursuant to 28 U.S.C. § 1746 declare:

    1.    I am a partner with the law firm of De Brauw Blackstone Westbroek N.V. ("**De Brauw**") in Amsterdam, the Netherlands. I attach my C.V. as **Exhibit 1**. I joined De Brauw in 1996 as an attorney and became a partner in 2005. My practice at De Brauw has focused on international arbitration and arbitration-related litigation before Dutch courts, as well as on cross-border commercial litigation. In addition, I hold numerous arbitration-related positions, including as Vice-President of the International Court of Arbitration of the International Chamber of Commerce in Paris. I have practiced before the Dutch courts for almost 21 years. I am fully familiar with the Dutch court system, Dutch law concerning challenges to arbitration awards, and Dutch appellate procedures.

1

2. I make this declaration based on my personal knowledge, experience and education. If sworn as a witness, I could and would testify competently to the matters referred to below.

3. I am lead counsel to petitioners Hulley Enterprises Ltd., Yukos Universal Ltd., and Veteran Petroleum Ltd. (collectively, "**Petitioners**") in proceedings before The Hague District Court (the "**Dutch District Court**") and the Court of Appeal of The Hague (the "**Dutch Appellate Court**") relating to the set aside of arbitral awards issued in the arbitration proceedings captioned *Hulley Enterprises Limited (Cyprus) v. The Russian Federation*, PCA Case No. AA 226; *Yukos Universal Limited (Isle of Man) v. The Russian Federation*, PCA Case No. AA 227; and *Veteran Petroleum Limited (Cyprus) v. The Russian Federation*, PCA Case No. AA 228 (the "**Awards**"). The Awards are attached hereto as **Exhibits 2(a)-(c)**.

4. I submit this declaration in support of Petitioners' Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding. As set forth in Petitioners' Application and Statement of Points and Authorities, the exhibits accompanying this declaration, and other papers filed with this submission, Petitioners seek limited discovery for use in connection with *Veteran Petroleum Limited, Yukos Universal Limited, Hulley Enterprises Limited v. The Russian Federation*, Case No. 200.197.079/01, which is currently before the Dutch Appellate Court.

5. Below, I describe (I) the proceedings that were initiated in the Dutch District Court by the Russian Federation to set aside the Awards, and the Dutch appellate process; (II) the amenability of the Dutch courts to receiving discovery obtained in 28 U.S.C. § 1782 ("**Section 1782**") proceedings; and (III) the relevance of the discovery the Petitioners seek to the Dutch appellate proceedings (the "**Dutch Proceedings**").

## I. THE DUTCH PROCEEDINGS

6. On July 18, 2014, an arbitral tribunal (the "**Tribunal**") sitting in The Hague, unanimously concluded that the Russian Federation breached its international obligations under the Energy Charter Treaty by bankrupting Yukos Oil Company ("**Yukos**") and unlawfully expropriating its assets. The Tribunal ordered in the Awards that the Russian Federation pay more than US $50 billion to the Petitioners, the former majority shareholders of Yukos, who had seen their investment in Yukos destroyed through fabricated tax debts and an illegitimate bankruptcy which resulted in the vast majority of Yukos' assets being transferred to Russian state-owned oil and gas companies Rosneft and Gazprom.

7. On November 10, 2014, the Russian Federation initiated proceedings to set aside the Awards before the Dutch District Court, invoking all five of the legal grounds available under Dutch law to set aside an arbitration award and asserting fourteen separate arguments in support of its position. After the parties had filed their respective submissions, a hearing before a three-justice panel was held on February 9, 2016 in The Hague. Each side was allotted one and a half hours for presenting its arguments and half an hour for rebuttal. No witnesses were presented or examined at the hearing.

8. On April 20, 2016, the Dutch District Court issued its judgment (the "**Dutch Judgment**") (attached hereto as **Exhibit 3** is an English translation of the Dutch Judgment, included with the original in Dutch), setting aside the Awards on the ground that the Russian Federation had not bindingly agreed to provisionally apply Article 26 of the Energy Charter Treaty – containing the arbitration clause – prior to its ratification by the Russian legislature. **Exhibit 3** ¶¶ 5.95-5.97; 6.1-6.9. As such, the Dutch District Court held that the arbitral tribunal lacked jurisdiction over the Petitioners' claims. The decision considered none of the remaining thirteen arguments asserted by the Russian Federation.

3

9.     On July 18, 2016, the Petitioners timely appealed the Dutch Judgment in the Dutch Appellate Court. Proceedings before the Dutch Appellate Court comprise a *de novo* reconsideration of the entire case. The Dutch Appellate Court owes no deference to the legal or factual findings made by the Dutch District Court. The parties may make entirely new, factual and legal arguments, though under Dutch arbitration law the Russian Federation is not allowed to bring forward new grounds for setting aside the Awards that were not included in its Writ of Summons. The parties may submit new evidence and new expert testimony, present authorities, and may request that the Dutch Appellate Court appoint its own expert. The Dutch Appellate Court will decide all issues raised by the parties, not only those relied upon by the Dutch District Court in reaching its decision. The Dutch Appellate Court will not remand the case back to the Dutch District Court, yet will decide itself on the Russian Federation's claims for the setting aside of the Awards.

10.    Petitioners filed their statement of grounds of appeal ("**Statement of Appeal**") on March 14, 2017. The Russian Federation's statement of defense on appeal ("**Statement of Defense**") is due on September 5, 2017. The Petitioners will then have an opportunity to comment ("**Comment Opportunity**") on any new exhibits (including possible expert reports and witness statements) the Russian Federation intends to file with its Statement of Defense, and both parties may brief the Dutch Appellate Court on whether the Petitioners should have the right to respond ("**Reply**") to the substance of the Statement of Defense. Both parties are in any event entitled to submit new evidence which has come to light before the merits hearing on appeal.

4

11. The Dutch Appellate Court has reserved two days in each of December 2017, April 2018, and June 2018 for oral pleadings or a potential case management conference, as needed.

## II. THE DUTCH COURTS ARE AMENABLE TO RECEIVING DISCOVERY OBTAINED THROUGH 28 U.S.C. § 1782

12. As discussed above, the Dutch Appellate Court will decide the Petitioners' appeal *de novo*. As a result, all issues raised in the lower court, as well as new issues, will be presented to the appellate court for review and determination. In the lower court, the Russian Federation made numerous allegations of unclean hands against the Petitioners in relation to the acquisition of their investment. The Russian Federation has made clear that it intends to reargue this issue before the Dutch Appellate Court. The discovery Petitioners seek in their Application will be used in response to the Russian Federation's submissions in their Statement of Defense or for submission by the Petitioners prior to the oral hearing on appeal as new evidence.

13. Under Article 152 of the Dutch Code of Civil Procedure, parties have the right to submit evidence in any form unless expressly prohibited by law. Dutch Code of Civil Procedure (*Wetboek van Burgerlijke Rechtsvordering*) ("**DCCP**"), Section 152(1). This right has been affirmed by the Dutch Supreme Court. *See* Supreme Court 18 April 2014, nr. 12/06004, ECLI:NL:R:2014:942. There are no Dutch laws prohibiting the use of evidence collected under Section 1782.

14. To the contrary, Dutch courts have held that evidence collected through Section 1782 may be used in Dutch proceedings. In *Convex cs v. Duizendstraal cs.*, the Utrecht District Court rejected a party's objections to the use of evidence collected pursuant to Section 1782 and held that parties are free to use an "informal judicial method" outside of the Dutch courts to collect evidence. Pres.Rb. Utrecht 9 April 1996, KG 1996/158 (Convex cs./Duizendstraal cs.).

The Court found that Section 1782 was such an "informal" method, and could be invoked without the intervention of the Dutch courts. Accordingly, the Court admitted both documents and the written transcripts of depositions obtained pursuant to Section 1782. *Id.* The district court's decision was affirmed on appeal. Hof Amsterdam 24 October 1996, NIPR 1997/120 (Convex cs./Duizendstraal cs.). Various authors have confirmed this understanding that "evidence obtained through U.S. [Section 1782] discovery can, subsequently, be used in a Dutch civil proceeding." K.J. Krzeminski, *U.S. discovery for use in Dutch civil proceedings*, 2 TCR 2008 47, 55 (2008) and J.J.H. Joosten and J.C. Tijink, *Summoned in the US: discovery*, TOP 2017, 235 (2017) (both referring to the decisions of the President Utrecht District Court and Amsterdam Court of Appeal in *Convex v. Duizendstraal* described above).

15. Under the circumstances, I am not aware of any legal prohibition to the use of evidence collected by the Petitioners through Section 1782 in the Dutch courts.

### III. THE RELEVANCE OF THE DISCOVERY REQUESTED TO THE DUTCH PROCEEDINGS

16. The destruction of Yukos and the taking of its assets was the largest, most complete and most systematically executed theft of private property by a State in modern history. Petitioners intend to use evidence collected through their Section 1782 Application to show the lengths to which the Russian Federation will go in its global effort to escape accountability for this unprecedented unlawful expropriation.

17. In particular, the Petitioners will seek to introduce the discovery produced to support its assertion that the Russian Federation's control of the judiciary even extends across its borders, which Petitioners argued in Paragraph 9 ("**Paragraph 9**") of Petitioners' Statement of Appeal (attached hereto as **Exhibit 4** is an English translation of excerpted sections 1.1-1.2.1, with the corresponding original excerpt in Dutch) as set forth here:

> Meanwhile, however, information has come to light through other proceedings that defies all imagination. The Russian Federation's control of the judiciary even extends across its borders. Recently, extensive direct evidence has come to light showing that state-owned Rosneft (the Russian Federation's most important extension in the worldwide battle surrounding the Yukos group) corrupted legal proceedings and influenced Armenian judges in Yukos-related cases in which the interests of the Russian Federation were evidently involved. More specifically, this concerns evidence from which it is apparent that Rosneft and others, with the aid of their international and Armenian teams of lawyers, colluded with the Armenian authorities and judges in Armenian proceedings. They have not only instructed the Armenian judges as to the Judgements that were to be rendered in these proceedings, but even drafted these themselves. The explicit objective of this was not only to ensure that the Armenian Judgements were to Rosneft's advantage, but indeed that these Judgements would contain specific considerations that, in related proceedings before the Dutch courts, would make the Dutch judges believe that the Armenian Judgements were the result of proper judicial procedure. As a result, the question to whom the shares in a specific Yukos company belonged, was said to have already been answered by independent and impartial judges in Armenia. That the parties involved initially succeeded in this purpose is demonstrated by the Judgement of the Court of Appeal of Amsterdam of 17 May 2011, in which a Judgement of the Armenian cassation court of 29 October 2010 is recognised, part of which was drafted by Rosneft's lawyers.

**Exhibit 4** ¶ 9 (citations omitted).

18.  There are no similar applications for discovery pending in the Dutch Proceedings that would militate in favor of deferring to the Dutch courts. Nor does Dutch procedural law provide for a non-party to be subject to jurisdiction in the Netherlands in the Dutch Appellate Court under the present circumstances.

19.  For these reasons I support the Petitioners' Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 15, 2017 in Amsterdam, Netherlands.

*[signature]*

Marnix Leijten
DE BRAUW BLACKSTONE WESTBROEK
Claude Debussylaan 80
1082 MD Amsterdam
The Netherlands
Telephone: +31-20-577-1609
E-mail: marnix.leijten@debrauw.com