# Exhibit 11

**Russia Business & Finance**

# Rosneft lawyers manipulated Yukos rulings, emails suggest

Documents indicate Russian state oil giant instructed justice official on outcomes

## FT Investigations



© Bloomberg

4 HOURS AGO by: Catherine Belton and Michael Stott

Lawyers for Russia's state-controlled oil giant Rosneft (http://markets.ft.com/data/equities/tearsheet/summary?s=ru:ROSN) manipulated a series of Armenian court rulings in order to bolster its case in the west to seize hundreds of millions of dollars in assets belonging to the now-defunct private oil major Yukos, emails seen by the Financial Times suggest.

The Kremlin's 2003-7 campaign against Yukos, which involved bankrupting the company with billions of dollars in back-tax demands, jailing its chief executive Mikhail Khodorkovsky and selling off its assets at a discount, mostly to Rosneft, has long been seen as the pivotal episode in which President Vladimir Putin brought Russia's oligarchs to heel.

The seizure of Yukos triggered a wave of litigation in various jurisdictions and the emergence of the emails is set to raise the stakes in ongoing billion-dollar battles for shareholder compensation.

The emails seen by the Financial Times were filed in Dutch legal proceedings over the oil giant's Armenia-registered treasury arm Yukos CIS, which held $400m in assets via a Dutch foundation.

The emails show Rosneft lawyers giving instructions to a senior member of the Armenian justice system on the outcomes required in five Yukos-related cases. Other emails show Rosneft lawyers working to draft rulings in advance for the Armenian court in cases in 2010-11 over Rosneft's takeover of Yukos CIS.

The court filings open a window on a system in which powerful Russian state actors appear to have been able to subvert the justice system in their own interests.

"We have always known that the Russian authorities have been able to influence the outcome of court decisions in Russia," said Steven Theede, the former Yukos chief executive who fled Russia in 2004. But the emails have "given us an opportunity to see what really goes on behind the scenes. It has proven the position we've taken from the beginning which is that the bankruptcy ... was based on a manipulation of the courts."

Rosneft said that it had already strongly denied the allegations of judicial misconduct, which it described as "ill-founded contentions", in a Dutch court years ago.

It added: "We are confident that you will also note that similar allegations of misconduct were made against the Yukos side. The Armenian issues with allegations of impropriety made by both parties against each other were fully briefed in court and settled two years ago as part of an overall settlement. Discussions of separate episodes are futile."

The company's response, reproduced in full at the end of this article, did not challenge the authenticity of any particular emails.

Rosneft announced in April last year that it had agreed to settle (http://next.ft.com/content/e95c3cd4-d87b-11e4-ba53-00144feab7de)the cases surrounding Yukos CIS.

The settlement gave the Yukos foundation the right to distribute the $400m to Yukos's former shareholders. It came three months after the Amsterdam district court ruled to admit the emails filed in the proceedings over Yukos CIS as evidence, despite Rosneft's objections, according to a copy of the court ruling seen by the Financial Times.

A key Armenian judge involved in the Yukos CIS case, Surik Ghazaryan, resigned under pressure in 2011 and fled to the US where he received political asylum.

He testified for the Dutch court that the decisions he rendered in the Yukos-related cases had been dictated to him from on high. In one instance, he said, he had been handed a February 2011 ruling on a USB stick by a senior judge. The Yukos foundation has disclosed to the Dutch court that it provided financial support to Mr Ghazaryan after he fled to the US.

The emails in the Yukos Armenian hearings, whose details have not been disclosed to the public until now, have also been filed as evidence in a separate case still being heard in Dutch courts over more than $800m in assets held by Yukos International, the Dutch holding company for Yukos's foreign assets. The Amsterdam court of appeal is due on Monday to hold the next hearing in that case.

The disclosure of the emails also raise the stakes in the biggest Yukos-related legal battle of all, a $50bn claim under the international energy charter by former shareholders.



*Mikhail Khodorkovsky, former Yukos chief executive © AP*

A Dutch court earlier this year overturned (http://next.ft.com/content/2a23a352-06ce-11e6-a70d-4e39ac32c284) a decision by a private arbitration panel that the Russian state expropriated Yukos

3

and should pay $50bn in compensation. The main Yukos shareholders, known as GML, are preparing for an appeal hearing in January.

The emails seen by the Financial Times show that Rosneft lawyers travelled to Armenia at the end of June 2010, shortly after a Dutch court issued a ruling that cast doubt on whether Rosneft would be able to assert its ownership of Yukos CIS in Armenia. One of the Rosneft lawyers wrote to a colleague that the legal team had been promised support but insisted that all details of the trip be kept secret.

"They are promising that everything will be OK, but only time will show," the Rosneft lawyer wrote. "Except I BEG YOU, it's like you don't know anything, neither about the trip, nor its goals, nor about the fact that we were promised support!"

It is not directly clear from the emails precisely whose support the Rosneft team was referring to. But in the months that followed, emails show that Rosneft's Armenian legal counsel Edward Mouradian sent instructions on two separate occasions in 2010 to an email address linked to a senior official in the Armenian legal system, Armen Nikoghosyan.

Mr Nikoghosyan served at the time as head of the Department for Protection of State interests in the Armenian prosecutors' office.

The instructions spelt out in red letters what Rosneft wanted as the outcome for five pending Armenian court cases relating to Yukos CIS.

In one of the cases, Rosneft requested to see a draft ruling before it was handed down. In another of the cases, it asked to see any counter-submissions filed by the opposing side in order to suggest what the court's response should be.

Another email sent by Mr Mouradian to one of his Armenian colleagues on the Rosneft team shows that the lawyers were aware of the risks involved.

The note from Mr Mouradian dated July 17 2010 says: "The previous was about the head of the department of prosecution Armen Nikoghosyan. All contact with him is top secret … : we report to him about the development of the case. Delete all communication after reading."

Mr Mouradian wrote in answer to a request for detailed comment that his law firm denied "any fact of improperly influencing court decisions".

He said that the firm was not in a position to provide further comment because the matter had been settled and his firm was bound by rules of attorney-client confidentiality. When reached by phone, Mr Nikoghosyan denied that he had received instructions from the Rosneft legal team and declined to comment further.

Emails show that the Rosneft legal team also appeared to provide text for a series of rulings for the Yukos CIS cases in the Armenian court.

In one email dated October 18 2010, one of Rosneft's Armenian legal team sent a document titled "possible decision of the court" to Mr Mouradian, as well as to members of the Rosneft legal team in Moscow.

Parts of the suggested court ruling in this document, for an appeal filed by the former Yukos shareholders in case number 1494, were reflected in the final ruling handed down nine days later on October 27 2010.

Other emails suggest that Rosneft lawyers continued to work on the details of a desired ruling after the judge had retired for deliberations.

Memos sent two days before a ruling on February 23 2011 was due to be handed down show the Rosneft legal team in Moscow working on "elements that would be helpful to see in a decision in case 1494".

"Lawyers have nothing to do [after the judge has retired]. They just have to wait until the judgment is delivered," said Vahe Grigoryan, an Armenian lawyer and expert on the Armenian justice system at the European Human Rights Advocacy centre. Any communication with the judge after he has retired to the deliberation room would be a violation of procedure, he said.

Arguments similar to the points apparently discussed by the Rosneft lawyers in one of the memos were included in the court ruling two days later.

Judge Ghazaryan subsequently testified that he had "no other choice" but to follow instructions to rule in favour of Rosneft.

"A clear and unequivocal message was sent to any Armenian judge presiding in a Yukos-related case: obey the instructions that come from the top and rule in favour of Rosneft and against Yukos or face harsh consequences."

Further emails from May 2011 show Rosneft's Armenian lawyers making substantial track changes and amendments to a draft ruling on a document headed by the official crest of the Armenian court, two weeks before it was

handed down. The changes and suggestions were included in the ruling handed down June 10.

> **Rosneft's comment to the Financial Times in full**
>
> We expect your source has given you access to the entire court file, so you will know that the ill-founded contentions you refer to were strongly denied in a Dutch court years ago.
>
> The decisions of the Armenian courts were correct on the merits under Armenian law. We are confident that you will also note that similar allegations of misconduct were made against the Yukos side.
>
> The Armenian issues with allegations of impropriety made by both parties against each other were fully briefed in court and settled two years ago as part of an overall settlement.
>
> Voluminous pleadings on these issues are available from the court file and a newspaper is not well-equipped to deal with the matter.
>
> Thus, discussions of separate episodes are futile. The sudden interest to a long-ago closed issue is another attempt on the Yukos side to reverse the course of the pending litigations and overcome their recent losses through mass media in order to influence the public opinion and the courts.
>
> We understand Yukos's hope to make up for the lack of legal arguments by the press publications, but we will not encourage such attempts and consider the matter closed.

Print a single copy of this article for personal use. Contact us if you wish to print more to distribute to others. © The Financial Times Ltd.

## Latest on Russia Business & Finance

**Europe**
US and EU agree to keep sanctions against Russia over Ukraine