UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING<br><br>HULLEY ENTERPRISES LTD., YUKOS UNIVERSAL LTD., AND VETERAN PETROLEUM LTD.,<br><br>            Petitioners,<br><br>            v.<br><br>BAKER BOTTS LLP,<br><br>            Respondent. | Misc. Case No. 17-1466 (BAH)<br><br>Chief Judge Beryl A. Howell |

**MEMORANDUM OPINION AND ORDER**

      The petitioners, Hulley Enterprises Ltd., Yukos Universal Ltd., and Veteran Petroleum Ltd., seek an order from this Court, pursuant to 28 U.S.C. § 1782, compelling the respondents, Baker Botts LLP and Ryan E. Bull, a partner in the Washington, D.C. office of that law firm, to produce documents and appear for depositions. *See* Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding and Statement of Points and Authorities in Support Thereof ("Appl.") at 1, ECF No. 1. The petitioners intend to use the discovery in an ongoing proceeding in the Court of Appeal of The Hague, in which the petitioners seek to reinstate arbitration awards totaling more than fifty billion United States dollars issued to the petitioners and against the Russian Federation. *See id.* at 1. The respondents oppose this request. *See* Resps.' Opp'n Application Discovery Pursuant 28 U.S.C. § 1782 ("Resps.' Opp'n"), ECF No. 11. For the reasons set forth below, the petitioners' Application is denied.

I.      BACKGROUND

On July 18, 2016, the petitioners appealed a ruling of the District Court of The Hague setting aside arbitration awards of over fifty billion United States dollars issued to the petitioners against the Russian Federation by an arbitral tribunal sitting in The Hague.  *See* Appl. at 3. As summarized in this Court's Memorandum Opinion granting the same three petitioners' motion for a stay of their related pending lawsuit to confirm the arbitration awards, *Hulley Enters. v. Russian Fed'n*, 211 F. Supp. 3d 269, 272–73 (D.D.C. 2016), the basis for the petitioners' awards against the Russian Federation is that sovereign's purported expropriation of the Yukos Oil Company, of which the petitioners were majority shareholders, by "assessing taxes and penalties, then forcing the liquidation of Yukos in November 2007," Resps.' Opp'n at 2, which liquidation involved transfer of Yukos's assets to Rosneft oil company, majority-owned by the Russian Federation, *see* Appl. at 3, 5.  Seventeen months after the related lawsuit to confirm the arbitration awards was filed here, the District Court of The Hague set aside the arbitral awards, concluding that the Tribunal lacked jurisdiction to issue the Awards "because the Russian Federation had never agreed to arbitrate its disputes under the [Energy Charter Treaty]," *Hulley Enters.,* 211 F. Supp. 3d. at 275, a decision that is now on appeal to the Court of Appeal of The Hague.  Three hearings relevant to the instant petition are currently scheduled in the Court of Appeal of The Hague action: one each in December 2017, April 2018, and June 2018, at which oral argument regarding the parties' respective positions will be heard.  *See* Appl. at 4.  The parties may submit new evidence to that appellate court.  *See id.*

The respondents in this matter represent Rosneft "in connection with the [petitioners'] threats to enforce the . . . arbitration awards against Rosneft."  Resps.' Opp'n at 4.  Previously, the respondents represented Rosneft in litigation by former Yukos executives to halt Rosneft's

acquisition of an Armenian Yukos-related entity, Yukos CIS Investment. *See id.* at 3. In July 2009, the former Yukos executives' claims were rejected by an Armenian Civil Court, but they continued to press legal challenges in Armenian courts. *See id.* at 4. At the same time, Rosneft sought "to replace the management of a Dutch subsidiary of Yukos CIS, and to unwind [a] trust structure imposed by" the former Yukos executives to maintain their control of Yukos CIS even after its sale to Rosneft, through legal actions in the Netherlands, British Virgin Islands, and the United Kingdom. *Id.*

According to the petitioners, they "believe the evidence sought in this Application will show efforts by the Russian Federation to manipulate Armenian courts so as to influence proceedings before the Dutch courts." Appl. at 4; *see also id.* at 1 ("Petitioners seek evidence relating to the Russian Federation's efforts, both directly and through its agents, to interfere with and manipulate Armenian courts in order to obtain favorable judgments and influence related cases then pending in the Dutch courts."). Specifically, the petitioners assert that "[a]ccording to press reports, Rosneft, acting through counsel to the Russian Federation, arranged the outcome of several Yukos-related judicial decisions in Armenia" in 2010 and 2011. *Id.* at 5. While the respondents presently represent Rosneft, not the Russian Federation, the petitioners aver that Baker Botts was "counsel of record to represent the Russian Federation" in the arbitration proceedings leading to the awards at issue in the Court of Appeal for The Hague, and point to emails and documents from 2010 and 2011, reported in the press and filed as exhibits "as part of a separate Dutch litigation involving the forced bankruptcy of Yukos by the Russian Federation . . . appear[ing] to show Baker Botts and Mr. Bull's participation [as counsel for Rosneft] in the Russian Federation's efforts directed at the Armenian courts." *Id.* at 8. As the respondents explain, the former Yukos executives "proffered [the emails] as exhibits in the

Dutch proceedings" in an effort to "collaterally attack Armenian judgments unfavorable to" the executives. Resps.' Opp'n at 5. Yet, "all Yukos-related litigation between" the former Yukos executives and Rosneft was settled in 2015. *Id.* at 4. In other words, the allegations at the heart of this Application were raised before by Yukos affiliates but were abandoned.

In their proposed subpoenas, the petitioners seek to depose Baker Botts and Bull as to, *inter alia*, "[t]he facts and allegations forming the basis for the Application," the respondents' "role and participation" in the Yukos proceedings in Armenia and The Hague, its "interactions and Communications" with Rosneft, Armenian officials, Russian officials, or Dutch officials, including "actual or contemplated *ex parte* Communications," regarding the Yukos proceedings, *see* Subpoena Testify Deposition Civ. Action (Baker Botts LLP), ECF No. 1-7; Subpoena Testify Deposition Civ. Action (Ryan E. Bull), ECF No. 1-8, and documents falling within any of fifteen categories of information pertaining to the Yukos proceedings, *see* Subpoena Produce Docs., Information, Objects or to Permit Inspec. Premises Civ. Action (Baker Botts LLP), ECF No. 1-9; Subpoena Produce Docs, Information, Objects or to Permit Inspec. Premises Civ. Action (Ryan E. Bull), ECF No. 1-10.

The petitioners assert this evidence may be relevant to the Dutch proceedings because in the District Court of The Hague, "the Russian Federation made numerous allegations of unclean hands against the Petitioners" and "has made clear that it intends to reargue this issue before the Dutch Appellate Court." Appl. at 4. Thus, the discovery sought in this action "will be used in response to the Russian Federation's submissions . . . regarding unclean hands or . . . as new evidence" by the petitioners to "allow the Dutch Appellate Court to fully and fairly assess the conduct of the Russian Federation in its dealings with foreign courts." *Id.* In other words, the petitioners do not contend that focus of the discovery has any direct bearing on the Russian

Federation's successful jurisdictional challenge to the arbitration awards that is the issue now on appeal before the Court of Appeal for The Hague.

The petitioners' Application was accompanied by a motion entitled Request to Proceed *Ex Parte* and to Obtain a Waiver of Notice Pursuant to Local Rules 40.5(b)(2) & (3) of the United States District Court for the District of Columbia, ECF No. 2.  On June 23, 2017, the Court entered an order denying, for the reasons stated in that Order, the petitioners' motion to proceed *ex parte* and waive the notice requirements of LCvR 40.5(b); directing the petitioners to serve the Order and Application on the respondents; and directing the respondents to show cause, by July 11, 2017, why the Application should not be granted.  *See* Order, dated June 23, 2017, at 1–4, ECF No. 5.  Thereafter, the respondents filed a motion for a one-week extension of time to show cause, *see* Resps.' Consent Mot. Extension Time File Opp'n, ECF No. 10, which motion was granted, *see* Min. Order, dated July 7, 2017, and the petitioners then moved for a one-week extension of time to reply, *see* Pet'rs' Consent Mot. Extension Time File Reply, ECF No. 12, which motion was also granted, *see* Min. Order, dated July 20, 2017.  The petitioners' Application became ripe on August 1, 2017.

**II.    LEGAL STANDARD**

Pursuant to 28 U.S.C. § 1782, "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . ."  28 U.S.C. § 1782(a).  "The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court," and "[t]o the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance

5

with the Federal Rules of Civil Procedure." *Id.* Nevertheless, "[a] person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege." *Id.*

Yet, "a district court is not required to grant a § 1782(a) discovery application simply because it has authority to do so" under the statute. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004). Rather, the district court should exercise its discretion, informed by consideration of four factors identified by the Supreme Court in *Intel*: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which case "the need for § 1782(a) aid generally is not as apparent as . . . when evidence is sought from a nonparticipant in the matter arising abroad"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance,"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Id.* at 264–65. In enumerating these factors, the Supreme Court declined to assign them weight or articulate a formula for their consideration, twice emphasizing it merely "suggest[s] guides for the exercise of district-court discretion." *Id.* at 263 n.15; *see also id.* at 247 ("[W]e suggest considerations relevant to the disposition of th[e] question" whether § 1782 aid "is appropriate . . . .").[1]

### III. DISCUSSION

The respondents oppose the petitioners' Application on the ground that the Application fails to meet the statute's requirements, and, in any event, "as a matter of discretion, the

---

[1] Accordingly, the petitioners' suggestion that *Intel* requires that "courts balance" the four discretionary factors is incorrect. Appl. at 12.

circumstances surrounding the application show that the requested discovery is not appropriate." Resps.' Opp'n at 7–8.  Specifically, the respondents assert "the discovery requested is [not] 'for use' in the Dutch appeal proceeding," as required by § 1782, because the respondents' representation of Rosneft "has no bearing on the Dutch appeal" involving the Russian Federation, *see* Resps.' Opp'n at 8, 11, and that consideration of the concerns reflected in the *Intel* factors militates against granting the Application principally because "the requests would . . . impose enormous burden on non-parties to the Dutch appeal in relation to evidence . . . not relevant to the Dutch appeal," *id.* at 13.  The petitioners counter that their Application meets the statutory requirements and, moreover, warrants the exercise of discretion to grant it because "the Russian Federation's interests are 'closely intertwined' with Rosneft's in Yukos-related matters" such that the information sought is relevant and the burden on the respondents not too great given the inapplicability of the Dutch attorney-client privilege rules and case law limiting discovery of present or former opposing counsel in pending litigation. Pet'rs' Reply Resps.' Opp'n ("Pet'rs' Reply") at 2–4, ECF No. 13.  While the petitioners' Application meets the statutory requirements for the discovery sought, the Application must nevertheless be denied as a matter of discretion.

      **A.**      **The Application Satisfies the Statutory Requirements for § 1782 Assistance**

Section 1782 contains three statutory requirements: "(1) the person from whom discovery is sought must reside in or be found within the district; (2) the discovery must be for use in a proceeding before a foreign or international tribunal; and (3) the application must be made by a foreign or international tribunal or any interested person." *In Matter of Application of Leret*, 51 F. Supp. 3d 66, 70 (D.D.C. 2014).  The respondents contest only the second of these requirements, contending the petitioners have failed to establish "that the discovery requested is

7

'for use' in the Dutch appeal proceedings." Resps.' Opp'n at 8 (quoting 28 U.S.C. § 1782(a)). Specifically, the respondents note that Rosneft and the Russian Federation are separate entities, and the conduct at issue in the Dutch appeal and the purported events sought by the petitioners' present request are distant in time, such that the discovery cannot be "for use" in the Dutch appeal. *See id.* at 9–11. In reply, the petitioners argue that the respondents' argument "creates a false standard against which use is measured." Pet'rs' Reply at 5. The petitioners are correct.

Section 1782's "for use" requirement is not an exacting one. As has been aptly explained, while courts may not "accept an applicant's request on blind faith," "the burden imposed upon an application is *de minimis*." *In re Veiga*, 746 F. Supp. 2d 8, 18 (D.D.C. 2010). Thus, "the question under the statute is whether an application may make 'use' of the discovery sought, not whether the foreign tribunal will ultimately find it 'useful,' a consideration that comes into play only in the context of the discretionary *Intel* factors." *Id.* at 19. Here, the petitioners have made the requisite *de minimis* showing that they may use the requested discovery in the Dutch appeal by describing a relationship between Rosneft and the Russian Federation and the possibility the petitioners, in response to the Russian Federation's doing the same, will raise an "unclean hands" argument. Appl. at 4. Consequently, the Application satisfies all three statutory requirements, and, thus, this Court has the authority to grant the Application.[2]

### B. As a Matter of Discretion, the Application Will Not Be Granted

As explained above, the discretionary *Intel* factors require consideration of (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which

---

[2] The respondents' assertion that "the circumstances of the [petitioners'] application, taken as a whole, confirm that the application is pretext to garner press and harass lawyers of an adverse party," Resps.' Opp'n at 21, is undermined by the conclusion that the petitioners' Application meets the statutory requirements for a § 1782 application.

case "the need for § 1782(a) aid generally is not as apparent as . . . when evidence is sought from a nonparticipant in the matter arising abroad"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance,"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Intel Corp.*, 542 U.S. at 264–65.  A court's discretion to grant or deny a § 1782 application is "considerable," and may appropriately take into account the "specific facts of [the] application" to determine which factor or factors "to weigh most heavily." *Lazaridis v. Int'l Ctr. for Missing & Exploited Children*, 473 Fed. App'x 2, 4 (D.C. Cir. 2012).

The fourth factor is the salient one here.[3]  In addition to the burden on the party from whom discovery is sought, courts have interpreted that consideration to contemplate the relevance of the requested discovery to the foreign proceeding.  *See In re Veiga*, 746 F. Supp. 2d at 19 (explaining that "whether the foreign tribunal will ultimately find [the requested discovery] 'useful'" is "a consideration that comes into play only in the context of the discretionary *Intel* factors").  In this case, the relevance of the requested discovery to the Dutch appeal proceeding is

---

[3]  While focusing on the fourth factor, the respondents also argue, in a mere two pages of their twenty-seven page opposition, that the "remaining *Intel* factors favor denial of the application." Resps.' Opp'n at 19–21 (emphasis and capitalization omitted).  The respondents' attempt puts them in the conflicted position of equating Rosneft and the Russian Federation so that the first *Intel* factor weighs in their favor—a characterization they vehemently object to elsewhere in their opposition, *see id.* at 9–11, and one this Court agrees should be rejected, given that Rosneft is held by shareholders other than the Russian Federation and would not be subject to subpoena in the Dutch appeal proceeding, *see id.* at 19–20.  The respondents also invoke Dutch attorney-client privilege rules as support for the second factor weighing in their favor, *id.* at 20-21, but the petitioners effectively counter that the this argument falls short of establishing that "the Dutch Appellate Court would exclude the evidence the Petitioners expect to find on the grounds that it may contain attorney-client communications," Pet'rs' Reply at 13.  The respondents also cannot resist the issue of the purportedly "stolen emails," Resps.' Opp'n at 16, advancing the possibility of "reward[ing] those who engage in cyber-crimes and hacking" as a reason the third factor weighs in their favor, *id.* at 21 (emphasis and capitalization omitted).  This matter presents no occasion for opining as to the respondents' suggestion that the petitioners are responsible for, or aware of, improper methods used to obtain the emails and note only that the petitioners cite only publicly available information. Appl. at 4–5.  Consequently, none of the respondents' arguments as to the other three *Intel* factors merits further discussion.

tenuous and sufficiently in question, and the burden on the respondents sufficiently onerous, to warrant denial of the petitioners' request.

As a preliminary matter, the petitioners object to the respondents' invocation of *Shelton v. American Motors Corporation*, 805 F.2d 1323 (8th Cir. 1986), and *Sterne Kessler Goldstein & Fox, PPLC v. Eastman Kodak Company ("Sterne-Kessler")*, 276 F.R.D. 376 (D.D.C. 2011) (Howell, J.), to support the respondents' assessment, arguing "those cases are inapplicable" because they apply only to considerations of discovery requests aimed at current or former opposing counsel in the litigation for which the discovery is sought. Pet'rs' Reply at 4. While the petitioners appropriately distinguish counsel in *Shelton* and *Sterne-Kessler* from the respondents here, who are concededly not current or former opposing counsel in the Dutch appeal proceeding, that distinction only gets the petitioners so far. Given the respondents' representation of an entity adverse to the petitioners and their affiliates in other proceedings, the factors deemed important in *Shelton* and *Sterne-Kessler* bear on consideration of the potential burden on the respondents of the petitioners' requested discovery.

With respect to the relevance of the requested discovery to the Dutch appeal proceeding, the petitioners emphasize the discovery could "lead to evidence of the Russian Federation's manipulation of a foreign court to influence the outcome of a then-pending Yukos matter," Appl. at 10, but fails to connect the dots between this evidence and the Dutch appeal proceeding, which involves questions of jurisdiction in no way implicating the Russian Federation's conduct, as well as events culminating in 2007, years before the conduct in 2010 and 2011 giving rise to the petitioners' discovery request, *see, e.g.,* Resps. Opp'n at 11–12. Furthermore, in *Sterne-Kessler*, it was significant that the defense to be supported by the requested discovery had not been pled in the underlying litigation. *See Sterne-Kessler*, 276 F.R.D. at 383. So too, here, the petitioners

10

have averred only that their proposed defense of unclean hands "will be used in response to the Russian Federation's submissions . . . regarding unclean hands," which submissions seem not yet to exist.  Appl. at 4 (noting that Russian Federation has alleged the petitioners had unclean hands in "the Dutch District Court," indicated "it intends to reargue this issue" on appeal, and "is likely to submit additional witness statement evidence in support of its position").  On these facts, the requested discovery would be of limited usefulness to the Dutch appeal proceeding, at best.

In contrast to the thin relevance of the requested discovery, the burden it would impose on the respondents is substantial.  The petitioners note "the burden of establishing a privilege or protection rests solely with the party seeking to invoke it" and assert the respondents have not carried their burden.  Pet'rs' Reply at 3.  The petitioners' point is well taken, in view of the respondents' failure to detail whether they have responsive documents, and, if so, how many and affected to what extent by privilege.  Nevertheless, the nature of the underlying litigation and the scope of the petitioners' discovery request leaves little to the imagination regarding the sensitive attorney-client information potentially at issue.  Similarly, in view of the adverse nature of the relationship between the petitioners and the respondents' client, "[t]he risk that the proposed [discovery] would be used to uncover aspects of . . . strategy . . . is a significant concern." *Sterne-Kessler*, 276 F.R.D. at 384.  As a result, the petitioners' requested discovery "carr[ies] the substantial potential of spawning litigation over collateral issues related to assertion of privilege, scope, and relevancy, that only . . . impos[e] additional . . . delays and costs on both parties and burdens on the courts to resolve work-product and privilege objections." *Id.* at 382.  These concerns are simply too significant to warrant granting the Application absent a showing that the requested discovery would be of even moderate relevance.

## IV. CONCLUSION

For the foregoing reasons, the petitioners' invitation to grant discovery pursuant to 28 U.S.C. § 1782 is declined. Accordingly, it is hereby

**ORDERED** that the petitioners' Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding and Statement of Points and Authorities in Support Thereof, ECF No. 1 is **DENIED**.

**SO ORDERED.**

Date: August 18, 2017

_____
BERYL A. HOWELL
Chief Judge